IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STEADFAST INSURANCE COMPANY, et al.,

              Plaintiffs,

v.                                   CIVIL ACTION NO.   2:15-cv-09203

BERKLEY NATIONAL INSURANCE
COMPANY, et al.,

              Defendants.

## MEMORANDUM OPINION & ORDER

Pending before the court are the plaintiff Arch Insurance Company's Motion for Summary Judgment [ECF No. 94] ("Arch's Motion"), the plaintiff Steadfast Insurance Company's Motion for Summary Judgment [ECF No. 92] ("Steadfast's Motion"; together, with Arch's Motion, "the plaintiffs' Motions"), and the defendants Berkley National Insurance Company and Stric-Lan Companies, LLC's Motion for Summary Judgment [ECF No. 89] ("the Defendants' Motion"). The parties have fully briefed each motion, and the matter is ripe for adjudication. For the following reasons, the court **GRANTS** the plaintiffs' Motions in part and **DENIES** the plaintiffs' Motions in part. The Defendants' Motion is **DENIED**.

### I.    Background

In this declaratory judgment action, I am asked to resolve a dispute regarding the parameters of an insurance policy. Specifically, I must determine whether, when

read together with an underlying document, the insurance policy required Berkley National Insurance Company ("Berkley") to provide primary, non-contributory coverage in a legal dispute that it refused to cover—a dispute that was ultimately paid for by the plaintiffs, Arch Insurance Company ("Arch") and Steadfast Insurance Company ("Steadfast").

### a.  The Master Service and Supply Agreement

HG Energy, LLC ("HG"), a West Virginia LLC, operates oil and gas wells in West Virginia. On October 1, 2012, HG entered into a Master Service and Supply Agreement ("MSSA") with Stric-Lan Companies, LLC ("Stric-Lan"). Steadfast Mot. Summ. J. Ex. A, at 7 [ECF No. 92-1] ("Berkeley Admis."); Steadfast Mot. Summ. J. Ex. C, at 1 [ECF No. 92-3] ("MSSA"). Under this agreement, Stric-Lan, a Louisiana LLC, agreed to provide certain natural gas well services for HG. *See* MSSA. Importantly, the MSSA requires Stric-Lan to procure insurance and name HG as an "additional insured" under that insurance. *Id.* at 7. Moreover, the procured insurance is to "be primary in relation to any policies in which any member of [HG] is a named or additional insured." *Id.*

In addition to the insurance obligations, the MSSA also establishes indemnity obligations for both HG and Stric-Lan. *Id.* at 8–13. Under the MSSA, Stric-Lan's indemnity obligations are as follows:

### B. ALLOCATION OF RISK

#### 1.  CONTRACTOR'S INDEMNITY OBLIGATIONS

2

Contractor [Stric-Lan] shall defend, indemnify, hold harmless, and release Company [HG Energy] from and against any and all claims, losses, damages, demands, causes of action, suits, judgments and liabilities of every kind (including all expenses of court costs and reasonable attorneys' fees) brought or asserted against Company [HG Energy] by any party whomsoever, directly or indirectly arising out of or related to this Agreement and resulting from any claim of loss, damage, injury, illness, or death, including, but not limited to, those described in subparagraphs (a) through (i) below, *to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]*, regardless of whether the Company [HG Energy] is negligent in part.

(a) Personal injury to, bodily injury to, emotional or psychological injury to, property or wage loss, benefits loss, or illness or death of Contractor's employee . . . .

*Id.* at 9 (emphasis added).[1] Importantly, the MSSA defines contractor as "[Stric-Lan], any parent company of [Stric-Lan], . . . and [Stric-Lan's] agents, directors, officers, and employees." *Id.* at 6.

Finally, the MSSA requires Stric-Lan to defend any claim for which it indemnifies HG. *Id.* at 12. Should Stric-Lan fail to defend and indemnify a claim that falls under the agreement, Stric-Lan is liable for any amount paid to settle the claim. *Id.* at 13.

---

[1] HG owes similar reciprocal indemnity obligations to Stric-Lan; however, HG's indemnity obligations do not affect the present case because no party sought indemnification from HG.

3

### b.  The Berkley Insurance Policies

To satisfy its duty to procure insurance pursuant to the MSSA, Stric-Lan issued a certificate of insurance, which evidenced that HG was a "Blanket Additional Insured as Required by Written Contract" on two Berkley policies purchased by Stric-Lan. Steadfast Mot. Summ. J. Ex. D, at 2 [ECF No. 92-4]. Specifically, HG was an "additional insured" under the Berkley Primary Policy and Berkley XS Policy. *See* Steadfast Mot. Summ. J. Ex. E, at 4 § B.1 [ECF No. 92-5] ("Berkley Primary Policy"); Steadfast Mot. Summ. J. Ex. F, at 4 § III.A [ECF No. 92-6] ("Berkley XS Policy"); MSSA 7. The "Additional Insured" provision of the policies provides coverage to "[a]ny person or organization with whom [Stric-Lan] agree[s] in writing in [the MSSA], to add as an Additional Insured on [Stric-Lan's] policy . . . but only with respect to liability *arising out of [Stric-Lan's] operations*."[2] Berkley Primary Policy 4 § B.1 (emphasis added). However, coverage for the "additional insured" is limited to "the lesser of: (a) the coverage and/or limits of this policy; or (b) the coverage and/or limits required by [the MSSA]." *Id.*

### c.  The Kunz Incident

In the course of performing its duties under the MSSA, Stric-Lan hired Tyler Kunz to work at an HG well site. Steadfast Mot. Summ. J. Ex. B, at 10 [ECF No. 92-2] ("Stric-Lan Admis."). While he was working for Stric-Lan at the HG site, Mr. Kunz

---

[2] Although the Berkley XS Policy does not contain the "Additional Insured" provision, the Berkley XS Policy adopts the coverage provided in the Primary Policy by stating, "[T]he following persons and organizations qualify as INSUREDS: . . . 2. Other persons or organizations qualifying as an INSURED in [the Berkley Primary Policy]." Berkley XS Policy 4 § III.A.2.

4

lit a cigarette near a natural gas hazard, resulting in an explosion and significant injury to himself. *Id;* Steadfast Mot. Summ. J. Ex. H, at ¶¶ 5–7 [ECF No. 92-8] ("Kunz Compl."). In the present case, Stric-Lan and Berkley both admitted that Mr. Kunz's ill-fated smoke break constituted negligence on Mr. Kunz's part. Stric-Lan Admis. 11; Berkley Admis. 11 [ECF 92-1].

Following his injury, Mr. Kunz sued HG and Stric-Lan, alleging that HG was negligent in maintaining its workplace and Stric-Lan was liable under West Virginia's deliberate intent statute. Kunz Compl. ¶¶ 8–13. Pursuant to the terms of the MSSA and insurance policy, HG sought defense in the Kunz litigation from Stric-Lan and Berkley. *See* Notice Removal Ex. A, at ¶¶ 44–45 [ECF No. 1-1] ("Compl."). Both Berkley and Stric-Lan refused to defend or indemnify HG. Berkley Admis. 17; Stric-Lan Admis. 17. As a result of Berkley and Stric-Lan's refusal to defend, Arch and Steadfast—companies that provided separate insurance policies for HG—paid for the defense and settlement of the Kunz litigation. Steadfast Mot. Summ. J. ¶¶ 37, 49.

After Stric-Lan and Berkley refused to defend or indemnify HG, Arch and Steadfast brought the present suit to determine whether (1) the Berkley policy provided "additional insured" coverage for HG in the Kunz litigation and (2) the Berkley policy provided primary, non-contributory coverage for the defense and settlement of the Kunz litigation. Compl. ¶ 44.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731

6

F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### III.   Discussion

This case presents several distinct issues. First, because neither Arch nor Steadfast were parties to the contracts at issue in this case, I must resolve whether they have standing to bring their claims. Next, I must establish which state's contract law to apply in the present dispute. Finally, I must determine the parameters of the policy at issue and decide whether, under those parameters, Berkley had a duty to provide primary, non-contributory coverage in the Kunz litigation.

Before proceeding, I will address the parties' unhelpful briefing.[3] Under Local Rule 7.1(a)(2) of the Southern District of West Virginia, memoranda of law may be no more than twenty pages. Steadfast ignored that rule and submitted a twenty-one page memorandum. That Steadfast memorandum is dwarfed by both its twenty-seven page Motion for Summary Judgment—a Motion accompanied by a voluminous ream of exhibits—and its twenty-nine page Response—a Response supported by another twenty-page memorandum. Next, without filing a motion, Arch submitted a twenty-page amended memorandum of law supporting its motion for summary judgment. The amendment did not mention why it was necessary or point out what in the twenty-page document had been amended. Failing to distinguish itself from its problematic peers, Berkley stated that a proposition was "hornbook law" and then

---

[3] All told, the parties submitted two-hundred and seventeen pages of motions and memoranda on this issue alone.

completely failed to point to any authority supporting its proposition. *See* Berkley Mem. Supp. Mot. Summ. J. 17 [ECF No. 90]. Despite all of their "briefing," the parties poorly addressed the issues of standing and the application of Pennsylvania law to the dispute. I was left to figure those issues out on my own.

### a. Standing

This case presents a novel question of standing that neither party raised: May a plaintiff maintain a declaratory judgment action based upon a contract between the defendants? Often, the answer will be no; however, where, as here, the contract between the defendants affects the legal relationship between the plaintiff and the defendant, sufficient standing exists to maintain a declaratory judgment action.

In order to maintain an action in federal court, a plaintiff must show that they have standing under federal law. *Miller v. Augusta Mut. Ins. Co.*, 157 F. App'x 632, 636 (4th Cir. 2005) (citing *Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 804 (1985)). Under 28 USC § 2201, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." In order to determine if an actual controversy exists between interested parties, courts should consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). If a plaintiff's complaint fails to allege facts

8

sufficient to establish standing, the suit must be dismissed. *See, e.g.*, *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 808–09 (E.D. Va. 2007).

Here, the plaintiffs' Complaint asks me to interpret a contract to which the plaintiffs were not a party.[4] In isolation, this is insufficient to confer standing. The plaintiffs, however, urge me to consider the contract because it determines whether their coverage obligations are subordinate to the obligations of Berkley. Although their case focuses on the interpretation of a contract to which they are not a party, the interpretation of that contract is an essential part of establishing the legal relationship between the plaintiffs and defendants. Indeed, the Tenth Circuit determined that similar facts were sufficient to confer standing.[5] *United Servs. Auto. Ass'n v. Royal-Globe Ins. Co.*, 511 F.2d 1094, 1096 (10th Cir. 1975) (finding standing between two insurers seeking a declaration of coverage because "[t]he subject matter of the suit—the duty to defend and indemnify . . . [in a] lawsuit—is definite and substantial[,] [e]ach party has a stake in the outcome, and their interests are adverse"); *see also* 16 Steven Plitt et al., Couch on Ins. § 232:63 (3d ed. 2016) ("It is

---

[4] Because the plaintiffs settled the Kunz litigation after this lawsuit began, the facts of the case have evolved such that they now invoke subrogation principles. However, courts evaluate standing based on the facts alleged in the complaint, and the plaintiffs have not amended their Complaint since the lawsuit began. Therefore, I must evaluate the standing based on the current Complaint seeking declaratory judgment—not a hypothetical complaint seeking subrogation.

[5] Although the Eleventh Circuit determined that standing did not exist in similar circumstances, it determined that had the "the insurers jointed the insured in their action, a definite and substantial controversy would [have] exist[ed], as the declaratory judgment action would be to establish the rights and obligations between the insurers and the insured as evidenced in the insurance contract." *Provident Life & Acc. Ins. Co. v. Transamerica-Occidental Life Ins. Co.*, 850 F.2d 1489, 1493 (11th Cir. 1988). Here, HG is joined as a defendant; therefore, even under that narrower view of standing, the plaintiffs may proceed.

9

properly within the competent authority of a court to hear a declaratory judgment action relating to the rights and obligations of two insurance companies as to the coverage of their respective policies, where the pleadings embrace and present this ultimate and controlling issue."). Therefore, because the MSSA—a contract to which only the defendants are parties—is intimately intertwined with the priority of all parties' coverage obligations, "there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co.*, 312 U.S. at 273.

Accordingly, I **FIND** that the plaintiffs have standing to bring the present suit.

### b. Choice of Law

Next, I must determine which state's law to apply. Berkley vacillates, arguing at one point that Pennsylvania law applies and at another point that Louisiana law applies. *See* Berkley Mem. Supp. Mot. Summ. J. 6, 8–18. Arch and Steadfast instead argue that West Virginia law should apply to this case. Arch Resp. 7–10 [ECF No. 100]; Steadfast Mem. Supp. Resp. 11–12 [ECF No. 99]. For the following reasons, Pennsylvania law must be applied to this dispute.

In determining which state's law applies, I must follow the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Cavcon Inc. v. Endress + Hauser, Inc.*, 557 F. Supp. 2d 706, 719 (S.D. W. Va. 2008). In West Virginia, interpretation of insurance coverage is analyzed as a contract

issue for conflict of laws purposes. *Liberty Mut. Ins. Co. v. Triangle Indus., Inc.*, 390

S.E.2d 562, 566–67 (W. Va. 1990). Specifically,

> [I]n a case involving the interpretation of an insurance
> policy, made in one state to be performed in another, the
> law of the state of the formation of the contract shall
> govern, unless another state has a more significant
> relationship to the transaction and the parties, or the law
> of the other state is contrary to the public policy of this
> state.

*Id* at 567. Courts must consider "where the last event necessary to make a contract

binding occurs" to decide where the contract was formed. *McGough v. Nalco Co.*, 496

F. Supp. 2d 729, 742 (N.D. W. Va. 2007). Finally, in determining whether a state has

a "more significant relationship" to the transaction, courts must consider

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the
> relative interests of those states in the determination of the
> particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to
> be applied.

Restatement (Second) of Conflict of Laws § 6(2)(a)–(g) (Am. Law Inst. 1971); *Triangle*,

390 S.E.2d at 567.

Here, it is unclear where, exactly, the contract was formed. However, even

assuming that the contract was formed in Louisiana, the current dispute is most

significantly related to Pennsylvania. Therefore, as an initial matter, Louisiana must

be ruled out because its interest in interpreting the insurance policies of an LLC

11

within the state pale as the LLC leaves the state to conduct business with entities located in other states. As will be discussed below, Louisiana's interest in the case cannot overcome the interest of Pennsylvania.

The current dispute involves the "additional insured" coverage of a West Virginia LLC, the Kunz litigation filed in West Virginia, and a district court located in West Virginia. Indeed, the relevant policies and interests of West Virginia certainly favor applying West Virginia law to a matter so tied to the state. However, despite the dispute's West Virginia ties, I cannot sacrifice justified expectations and uniformity of results.

Here, the contract that the plaintiffs ask me to interpret contains a choice of law provision requiring the parties to interpret the MSSA according to Pennsylvania law. MSSA 17. While that provision is ultimately unenforceable between Arch, Steadfast, and Berkley because they are not signatories to the contract in which it was contained, it is necessary to apply Pennsylvania law to protect justifiable expectations and create uniform results. Justifiable expectations require the application of Pennsylvania law because HG and Stric-Lan carefully negotiated their contract with the understanding that Pennsylvania law would apply; third-parties should not be able to thwart the agreement of parties privy to the contract. *Cf. Pen Coal Corp. v. William H. McGee & Co.*, 903 F. Supp. 980, 986–87 (S.D. W. Va. 1995) (recognizing that a choice of law provision in an insurance contract creates strong justifiable expectations that the contract will be litigated under the selected law and

12

that "[t]he absence of such a provision in this case makes unclear the expectations of the parties"). Indeed, were I to hold that law other than Pennsylvania law applies, it would open new avenues of legal gamesmanship, allowing insurance companies to skirt choice of law provisions using declaratory judgment actions. Hence, justifiable expectations require me to apply Pennsylvania law.

Furthermore, I must apply Pennsylvania law in the interest of preserving uniform results. Had Steadfast and Arch brought a subrogation action and sued from HG's position, they would have been bound by the choice of law provision in the MSSA. *See One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 832 n.9 (E.D. Va. 2004) ("As JNB's subrogee on the contract claims against Global, One Beacon is bound by JNB's contractual agreement to litigate disputes against Global arising from the towage contract in the Eastern District of Louisiana."). It would be absurd to allow Steadfast and Arch to apply one state's law when seeking a declaratory judgment interpreting a contract and another state's law when proceeding under a subrogation theory interpreting that very same contract. This is especially true where, as discussed above, the parties to the contract envisioned that the contract would be interpreted according to a particular state's law. *See* Restatement (Second) of Conflict of Laws § 6 cmt. i (Am. Law Inst. 1971) ("Predictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their

transactions."). Therefore, to protect uniform results, I must apply Pennsylvania law.[6]

Accordingly, because the protection of justifiable expectations and uniform results require the application of Pennsylvania law, I **FIND** that Pennsylvania law applies to this dispute.

### c. Parameters of Coverage

This case ultimately hinges upon the interpretation of the Berkley policies. Berkley advocates for a narrow reading of the policies, insisting that coverage must only be afforded "to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]." Berkley Mem. Law Supp. Mot. Summ. J. 6–8; *see* MSSA 11. Steadfast and Arch, on the other hand, urge me to frame coverage broadly, specifically asking me to determine that coverage is afforded where "liability arise[s] out of [Stric-Lan's] operations." Steadfast Mem. Law Supp. Mot. Summ. J. 18–20; Arch Mem. Supp. Mot. Summ. J. 8–14; Berkley Primary Policy 10.

Despite the parties' excessive briefing, the rule at the heart of this issue can be summed up in one succinct saying: When all else fails, read the instructions. Indeed, the Supreme Court of Pennsylvania has embraced reliance on the plain meaning of unambiguous terms in insurance contracts, holding, "In construing a policy of

---

[6] In an earlier order, I ruled that a forum selection clause in the MSSA was unenforceable because Steadfast and Arch were not parties to the MSSA. Mem. Op. Order Den. Defs.' Mot. Change Venue 4–6 [ECF No. 55]. I stress that I am not enforcing the choice of law provision by applying Pennsylvania law—I am following West Virginia's choice of law test.

insurance, we are required to give plain meaning to a clear and unambiguous contract provision unless such provision violates a clearly expressed public policy." *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195, 1199–200 (Pa. 2011) (citation omitted). Where a contract lays out terms under which the "additional insured" will be covered, the "additional insured" must be afforded coverage whenever the conditions specified in the terms occur. *See, e.g.*, *Twp. of Springfield v. Ersek*, 660 A.2d 672, 676 (Pa. Commw. Ct. 1995) (determining that an insurance contract that provided "additional insured" coverage where liability arose out of a party's operations provided "additional insured" coverage where liability arose out that party's operations).

Here, Stric-Lan agreed to purchase insurance pursuant to the MSSA, a document which all parties agree constitutes an "insured contract." Berkley Admis. 8; Stric-Lan Admis. 8. Under the MSSA, Stric-Lan has a duty to defend and indemnify HG "to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]." MSSA 11. The Berkley policies purchased pursuant to the MSSA afford a much broader spectrum of coverage, covering liability that "arise[s] out of [Stric-Lan's] operations."[7] Berkley Primary Policy 4 § B.1. The Berkley policy, however, limits its coverage to "the lesser of: (a) the coverage and/or limits of this

---

[7] Under Pennsylvania law, coverage for incidents "arising out of" certain operations has been interpreted broadly to mean "causally connected with, not proximately caused by" those operations. *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967). Coverage for incidents "arising out of" a party's operations is considerably broader than coverage for incidents caused by a party's negligence.

15

policy; or (b) the coverage and/or limits required by [the MSSA]." *Id.* Because the plain language of the Berkley policy limits its coverage to the lesser of that policy or the MSSA, the policy's coverage is limited to the lesser terms provided by the MSSA.[8]

In an attempt to skirt the plain language of the policy and the MSSA, Arch and Steadfast argue that the insurance policies are "completely separate contracts not governed by the MS[S]A" because of the following clause contained in the MSSA:

> The parties agree that the indemnity and insurance obligations contained in this agreement are separate and apart from each other, such that failure to fulfill the indemnity obligations does not alter or eliminate the insurance obligations . . .

MSSA 6; Arch Mem. Supp. Summ. J. 4. However, that provision does not divorce the MSSA from the Berkley policy. Merely stating that failure to procure insurance does not relieve a party of its duty to indemnify and vice versa cannot separate two inexorably linked contracts, especially where, as here, (1) the Berkley policies were acquired pursuant to the MSSA, (2) the Berkley policies rely on the MSSA to determine who, exactly, the "additional insured" parties are, and (3) the Berkley policies expressly incorporate the lesser MSSA coverage. Simply put, nothing in that clause limits an insurance company's ability to incorporate coverage limits contained in the MSSA.

---

[8] The *Ironshore* case relied upon by Berkley is illustrative of this common sense proposition: Where an insurance contract says that it only applies in certain circumstance, it will, in fact, apply in those certain circumstances. *See Ironshore Specialty Ins. Co. v. Aspen Underwriting, Ltd.,* 788 F.3d 456, 460 (5th Cir. 2015) (limiting coverage to the minimum provided in an underlying insured contract where the insurance policy limited coverage to "the minimum Limits of Insurance [Endeavor] agreed to procure in [a] written Insured Contract").

Arch and Steadfast also argue, "There is no language in the Berkley policies that 'clearly manifests an intent' to incorporate the language of the MS[S]A with respect to the indemnity obligations." Arch Resp. 18. This argument disregards the plain language contained in the Berkley policies. It is hard to imagine a clearer statement of intent than expressly limiting coverage to "the lesser of: (a) the coverage and/or limits of this policy; or (b) the coverage and/or limits required by [the MSSA]." Berkley Primary Policy 4 § B.1.

Accordingly, because the Berkley policy expressly limits its coverage to the lesser terms of the MSSA, I **FIND** that the Berkley's coverage obligations are limited to those contained within the MSSA.

### d.  Coverage of the Kunz Incident

I must now determine whether HG was covered as an "additional insured" under the Berkley coverage. Berkley argues that the plaintiff in the Kunz litigation must allege negligence on the part of Stric-Lan to trigger coverage. Berkley Mem. Supp. Mot. Summ. J. 7–8. Arch and Steadfast maintain that the coverage does not require the underlying lawsuit to allege negligence; instead, it merely requires that the incident actually arise from Stric-Lan's negligence. *See, e.g.*, Steadfast Mem. Supp. Summ. J. 17–19.

Under Pennsylvania law, an insurer's "duty to defend and indemnify [must] be determined solely from the language of the complaint against the insured." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co.*, 908 A.2d 888,

17

896 (Pa. 2006). Specifically, courts must "look to the language of the policies themselves to determine in which instances they will provide coverage, and then examine [the] complaint to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.* at 896-97. The threshold for determining a duty to defend is low; indeed, "[a]s long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." *Lexington Ins. Co. v. Charter Oak Fire Ins. Co.,* 81 A.3d 903, 910–11 (Pa. Super. Ct. 2013). "Accordingly, it is the *potential*, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) (emphasis added).

The duty to indemnify follows the duty to defend. Where a court determines that no duty to defend exists, no duty to indemnify exists. *Kvaerner*, 908 A.2d at 896, n.7. If, however, a court determines that a duty to defend exists, it can determine whether a duty to indemnify exists by conducting an "inquiry into whether there was actual coverage for the underlying claim." *Am. States Ins. Co. v. State Auto Ins*. Co., 721 A.2d 56, 64 (Pa. Super. Ct. 1998). However, "[u]nlike the duty to defend, a determination of the duty to indemnify is not necessarily limited to the factual allegations of the underlying complaint." *State Farm Fire & Cas. Co. v. DeCoster*, 67 A.3d 40, 46 (Pa. Super. Ct. 2013).

18

Accordingly, I must now consider whether the complaint in the Kunz litigation triggered Berkley's duty to defend. If I determine that a duty to defend existed, I must then consider the underlying facts of the case to determine whether Berkley had a duty to indemnify.

The starting point of my analysis is the plain language of both the Berkley policy and the Kunz Complaint. Here, the policy specifically provides coverage "to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]." MSSA 9. Kunz sued both HG and Stric-Lan, alleging that HG was liable based on alleged negligence and Stric-Lan was liable under West Virginia's deliberate intent statute. The question, then, is whether the allegations contained in the Kunz Complaint "constitute the type of instances that will trigger coverage" where coverage is limited to claims caused by Stric-Lan's negligence, strict liability or willful misconduct. *Kvaerner*, 908 A.2d at 897. I determine that they are.

The complaint in the Kunz litigation specifically alleges that HG failed to exercise reasonable care with respect to worker invitees on its premises and Stric-Lan created a specific unsafe working condition.[9] Kunz Compl. ¶¶ 5–13. It is possible

---

[9] That the deliberate intent action against Stric-Lan was dismissed is irrelevant. Stric-Lan's and Berkley's duty to defend stems from the allegations in the Complaint, and that duty to defend lasts "until [Stric-Lan and Berkley can] confine the claim to a recovery excluded from the policy." *Sclabassi v. Nationwide Mut. Fire Ins. Co.*, 789 A.2d 699, 703 n.2 (Pa. Super. Ct. 2001). That never occurred here because the deliberate intent claim was dismissed during the summary judgment phase because Kunz was a resident of Texas and, accordingly, West Virginia worker's compensation law (the law that creates the deliberate intent cause of action) did not apply. *See* Berkley Mot. Summ. J. Ex. B, at 9–10. That ruling never addressed whether Stric-Lan's alleged conduct potentially caused HG's conduct.

that the alleged unsafe condition created by Stric-Lan is the root of HG's alleged negligence—especially because the explosion was the only alleged unsafe condition. Where, as here, the Complaint alleges only one unsafe condition, it is certainly *possible* that the party who allegedly created the unsafe condition is the root of other parties' negligence relating to that condition. Possibility—not certainty or probability—determines whether an insurer has a duty to defend under Pennsylvania law. Therefore, because (1) it is possible that the unsafe condition allegedly created by Stric-Lan caused the alleged negligence by HG and (2) the creation of that condition certainly implicates negligence or willful misconduct on the part of Stric-Lan, Berkley owed HG a duty to defend.[10]

Having determined that a duty to defend existed, I must now consider whether there are sufficient facts to trigger Berkley's duty to indemnify. Here, I have sufficient evidence to determine that the Kunz incident was caused by the negligence of Stric-Lan. Specifically, both Berkley and Stric-Lan admit that Mr. Kunz's negligence—the negligence of a Stric-Lan employee—led to the incident at the heart of the Kunz litigation. The MSSA defines contractor as "[Stric-Lan], any parent company of [Stric-Lan], . . . and [Stric-Lan's] agents, directors, officers, and employees." MSSA at 7. By

---

[10] That HG itself might have been negligent does not matter. Under Pennsylvania law, "if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification." *Ruzzi v. Butler Petro. Co.*, 588 A.2d 1, 4 (Pa. 1991). Although Berkley contends that the clause in the MSSA does not contain language sufficient to allow HG to recover where its negligence contributed to the damage, this is not the case. The MSSA plainly permits indemnification "regardless of whether the Company [HG Energy] is negligent in part." MSSA 9.

admitting that their employee's negligence, Stric-Lan admitted they, as the contractor, caused the incident in question. Therefore, there is sufficient evidence to determine that Berkley's duty to indemnify was triggered.

Accordingly, I **FIND** that Stric-Lan and its insurer Berkley had a duty to cover HG as an "additional insured" and provide insurance "primary in relation to any policies in which any member of [HG] is a named or additional insured" because the Kunz complaint alleges sufficient facts to trigger Berkley's duty to defend and sufficient facts exist to trigger Berkley's duty to indemnify. MSSA 7.

## IV.   Conclusion

In summary, I **FIND** that the Berkley had an obligation to cover claims "to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]." Furthermore, I **FIND** that Stric-Lan and its insurer Berkley had a duty to provide primary coverage for the defense and indemnification of the Kunz matter.

Therefore, to the extent that Arch Insurance Company's Motion for Summary Judgment [ECF No. 94] and Steadfast Insurance Company's Motion for Summary Judgment [ECF No. 92] ask this court to declare that Stric-Lan and Berkley were obligated to provide primary, non-contributory coverage for the Kunz litigation, they are **GRANTED**. However, to the extent they address the insurance companies' rights, subrogation, amount in question and good faith settlements, and reimbursement, questions of fact remain. Their motions are **DENIED** as to those issues. Accordingly,

Berkley National Insurance Company and Stric-Lan Companies, LLC's Motion for Summary Judgment [ECF No. 89] is **DENIED.**

      The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

             ENTER:      November 21, 2016

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE