IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ARCH INSURANCE COMPANY, et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO. 2:15-cv-09203

BERKLEY NATIONAL INSURANCE
COMPANY, et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

This suit began as a declaratory action to declare the rights of the parties under competing insurance obligations: the terms in the Master Supply Service Agreement ("MSSA") [ECF No. 92-3] and the Berkley Policies [ECF Nos. 92-5 and 92-6]. Not. Removal [ECF No. 1]. In a published opinion, I found that "[t]he Berkley policy . . . limits its coverage to "the lesser of: (a) the coverage and/or limits of this policy; or (b) the coverage and/or limits required by [the MSSA]." 217 F. Supp. 3d 904, 914 (S.D. W. Va. 2016). Consequently, I found that the policy's coverage is limited to the lesser terms provided by the MSSA. *Id.* at 915.

Pending before the court are cross-motions for summary judgment [ECF Nos. 190 and 192]. The remaining issue before the court involves the interpretation of the indemnity provision in the MSSA. For the reasons that follow, the defendants'

Motion [ECF No. 192] is **GRANTED** and the plaintiff's Motion [ECF No. 190] is **DENIED**.

I. Background

HG Energy LLC ("HG") operates oil and gas wells in West Virginia, and Stric-Lan Companies LLC ("Stric-Lan") provides certain well-site services for HG. HG and Stric-Lan laid out this agreement for services in their Master Service and Supply Agreement. *See* MSSA [ECF No. 92-3]. In addition to the well-site services, the MSSA requires Stric-Lan to procure insurance and name HG as an "additional insured" under that insurance policy. *Id.* at 8. The MSSA also establishes defense and indemnity obligations under certain circumstances for both HG and Stric-Lan. *Id.* at 10–11. Pursuant to its obligations under the MSSA, Stric-Lan contracted with Berkley National Insurance Company ("Berkley") to provide coverage and named HG as an additional insured.

a. The Kunz Incident

This coverage dispute arises out of a personal injury lawsuit involving Stric-Lan employee Tyler Kunz ("Kunz Litigation"). While working for Stric-Lan at the HG site, Mr. Kunz lit a cigarette near a natural-gas hazard, resulting in an explosion and significant injury to himself. Following his injury, Mr. Kunz sued HG and Stric-Lan, alleging that HG was negligent in maintaining its workplace and that Stric-Lan was liable under West Virginia's deliberate intent statute. Pursuant to the terms of the MSSA and insurance policy, HG sought defense in the Kunz Litigation from Stric-Lan and Berkley. Both refused to defend or indemnify HG. As a result, Arch

Insurance Company ("Arch") and Steadfast Insurance Company ("Steadfast"), companies providing separate insurance policies for HG, paid for the defense and settlement of the Kunz Litigation.

After Stric-Lan and Berkley refused to defend HG, Arch and Steadfast brought this suit to determine (1) whether the Berkley insurance policy provided "additional insured" coverage for HG in the Kunz Litigation and (2) whether the Berkley policy provided primary, non-contributory coverage for the defense and settlement of the Kunz Litigation.

### b. November 11, 2016 Memorandum Opinion & Order

On May 31, 2016, and June 6, 2016, the parties cross-moved for summary judgment, and on November 11, 2016, I ruled on those motions in a published opinion. *See Steadfast Ins. Co. v. Berkley Nat'l Ins. Co.*, 217 F. Supp. 3d 904 (S.D. W. Va. 2016). In that Memorandum Opinion and Order, I found that Berkley had an obligation to cover claims "to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of the Contractor [Stric-Lan]." I also found that Stric-Lan and Berkley were obligated to provide primary, non-contributory coverage for the Kunz Litigation, that Stric-Lan and Berkley had a duty to defend HG in the Kunz Litigation, and that Stric-Lan and Berkley's duty to indemnify was triggered. *Steadfast*, 217 F. Supp. 3d at 917.

On January 17, 2018, Steadfast and Arch were granted leave to file Plaintiffs' First Supplemental and Amended Complaint for Declaratory Relief and Civil

Damages [ECF No. 142]. Among other things, the Amended Complaint seeks the damages that Steadfast and Arch incurred in defending and resolving the Kunz Litigation. *See* Am. Compl [ECF No. 142]. On August 13, 2018, Steadfast settled its claims with the defendants for the amount it paid to defend the Kunz Litigation, and the court dismissed it from this case. On February 14, 2019, Arch, the only remaining plaintiff, moved for summary judgment [ECF No. 190], seeking to recover the $5,000,000 it advanced to settle the Kunz Litigation with interest as well as attorney's fees and costs. On February 14, 2019, Defendants Berkley and Stric-Lan also filed a cross-motion for summary judgment [ECF No. 192]. The defendants argue that the Kunz Litigation was settled purely for the negligence of HG and not Stric-Lan. Moreover, they argue that because Stric-Lan did not contract to cover HG for HG's own negligence, the defendants are entitled to judgment as a matter of law. Argument was heard on the Motions during the pretrial conference and additional briefing was ordered. Both parties filed supplemental briefs, which the court has considered. The parties' second set of cross-motions for summary judgment are now ripe for review.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case." *Lester v. Gilbert*, 85 F. Supp. 3d 851, 857 (S.D. W. Va. 2015) (quoting *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,

597 F.3d 570, 576 (4th Cir. 2010)). "A genuine issue of material fact exists if . . . a reasonable fact-finder could return a verdict for the non-movant." *Runyon v. Hannah*, No. 2:12-1394, 2013 WL 2151235, at *2 (S.D. W. Va. May 16, 2013) (citations omitted); *see Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("Disposition by summary judgment is appropriate . . . where the record as a whole could not lead a rational trier of fact to find for the non-movant."). The moving party bears the burden of showing that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp.*, 477 U.S. at 322–23. The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of summary judgment. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

"When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996)).

### III. Discussion

#### a. Scope of Indemnity

In my November 11, 2016 Memorandum Opinion and Order, I found that Stric-Lan had a duty to indemnify HG under the MSSA, which was triggered by Stric-Lan's negligence through its employee, Mr. Kunz. *See Steadfast*, 217 F. Supp. 3d at 916–17. Importantly, however, that holding did not resolve the scope of Stric-Lan's indemnity obligation. That is, the November 21, 2016 Order left open whether Stric-Lan's indemnity obligation is limited only to the negligence of Stric-Lan, giving it a comparative negligence construction, or whether complete indemnity, including HG's negligence, is required if Stric-Lan is negligent to any degree. I will begin with the language of the indemnity provision in the MSSA:

> Contractor [Stric-Lan] shall defend, indemnify, hold harmless, and release Company [HG] from and against any and all claims, losses, damages, demands, causes of action, suits, judgments and liabilities of every kind . . . brought or asserted against Company by any party whomsoever . . . *to the extent that such claims, losses, damages, injuries,*

6

> *illnesses, or death are caused by the negligence (of any degree); strict liability, or willful misconduct of the Contractor* [Stric-Lan], regardless of whether the Company [HG] is negligent in part.

MSSA 10 (emphasis added). Thus, the first question that must be answered is whether the MSSA sought to cover HG, the indemnitee, for the indemnitee's own negligence.

In Pennsylvania, "if parties intend to include within the scope of their indemnity agreement a provision that covers losses due to the indemnitee's own negligence, they must do so in clear and unequivocal language. No inference from words of general import can establish such indemnification." *Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1, 4 (Pa. 1991); *see also Perry v. Payne*, 66 A. 553, 557 (Pa. 1907). As the court in *Ruzzi* explained, assuming liability for the negligence of an indemnified party "is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation." *Id.* (quoting *Perry*, 66 A. at 557).

Interpreting nearly identical language, the Supreme Court of Pennsylvania found that the language "to the extent that" was ambiguous and could not overcome *Perry-Ruzzi*'s requirement that provisions that cover losses due to the indemnitee's own negligence must be in clear and unequivocal language. *See Greer v. City of Philadelphia*, 795 A.2d 376, 380 (Pa. 2002). The contract provided that the indemnitor agreed to indemnify and hold harmless the indemnitee

> from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from the performance of the Subcontractor's Work under this Subcontract . . . *but only to the extent caused in whole or in part by negligent acts or omissions of the Subcontractor,* the Subcontractor's Sub Subcontractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, *regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.*

*Greer*, 795 A.2d at 377 (emphasis added).

Indeed, the court found that "the clause provides indemnity only for the amount of damage caused by the indemnitor's negligence, and not for damages attributable to the indemnitee's negligence." *Id.* at 381. The provision does not state that HG is "completely indemnified 'when' or 'if' [Stric-Lan] is negligent. Rather, it states that [it is] indemnified '*to the extent*' that [Stric-Lan] is negligent." *Greer*, 795 A.2d at 380.[1] Further, the purpose of such standard language in the insurance industry is not to allow full indemnification for the negligence of the indemnitee as

---

[1] Other courts have reasoned as follows:

> "To the extent" can be read to mean "if"; that is, [indemnitor] is required to indemnify [indemnitee] only "if" [indemnitor] is also found negligent. Under that reading, "to the extent" is not inconsistent with complete indemnification of [indemnitee], even for its own negligence, as long as [indemnitor] is also negligent "to [some] extent." But the phrase also can be read to require [indemnitor] to indemnify [indemnitee] only "to the extent" of [indemnitor's] (or its sub-contractors') share of fault. Neither the "regardless of" phrase nor the "to the extent" phrase answers the question whether such indemnification would include [indemnitee's] own share of fault. [The provision] thus does not satisfy the required "unequivocal" expression of intention to obligate [indemnitor] to fully indemnify [indemnitee] for damages resulting from [indemnitee's] own negligence.

*Englert v. The Home Depot*, 911 A.2d 72, 80 (N.J. Super. Ct. App. Div. 2006).

8

long as the indemnitor is 1% negligent; rather, the purpose is "to protect parties who are not named insureds from exposure to vicarious liability for acts of the named insured." *Harbor Ins. Co. v. Lewis*, 562 F. Supp. 800, 803 (E.D. Pa. 1983) ("In this kind of provision, the risks have not been increased or altered, for the insurer is only insuring the additional insureds against vicarious liability for acts of the named insured.").[2] This interpretation is bolstered by the fact that the MSSA contains identical, reciprocal provisions for indemnification between HG and Stric-Lan. *Compare* MSSA 10 *with* MSSA 12. Having reciprocal provisions adds support to the finding that each was responsible for its own negligence: Assuming both parties were negligent to any degree, if HG is indemnified for Stric-Lan's negligence, Stric-Lan would be able to turn around and seek indemnification for HG's negligence. *See id.*

The plaintiff argues that the clause "regardless of whether or not such claim . . . is caused in part by" HG implies that indemnification encompasses the indemnitee's negligence. But the court in *Greer* found that the exact clause "merely [clarified] that any contributory negligence by [the indemnitee] [would] not bar . . . indemnification for damages due to [the indemnitor's] negligence." *Id.* at 380; *cf.* RESTATEMENT (THIRD) OF TORTS 3d § 22 (AM. LAW INST. 2000) (requiring that in order to be entitled to indemnification, an indemnitee "not [be] liable except vicariously for the tort of the indemnitor").

---

[2] Furthermore, as the court in *Greer* explained, a "comparative negligence construction" would not render the indemnity provision meaningless because the clause would entitle the indemnitee to additional amounts that contribution would not otherwise provide; e.g., an additional means of recovery, attorney's fees and expenses, and recovery for not only the negligence of Stric-Lan, but also the negligence of any parent company, heirs, successors and assigns, subsidiaries and affiliates, all contractors and subcontractors, and Stric-Lan's agents, directors, officers and employees. *Compare Greer*, 795 A.2d at 381–82 *with* MSSA 7.

9

The plaintiff next argues that a similar contract provision in *Hershey Foods Corp. v. General Electric Service Co.*, 619 A.2d 285 (Pa. 1992), is controlling. In *Hershey*, the court found that the indemnity provision "clearly and unequivocally" provided for indemnity, even for the indemnitee's own negligence. *Hershey*, 619 A.2d at 288. That language reads as follows:

> [Indemnitor] shall indemnify and hold harmless [Indemnitee] and their agents and employees from and against all claims, damages, losses and expenses including attorneys' fees arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (a) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss or[sic] use resulting therefrom, *and (b) is caused in whole or in part by any negligent act or omission of [Indemnitor]*.

*Hershey*, 619 A.2d at 286–87 (emphasis added). The plaintiff also argues that the language in the MSSA is distinguishable from *Greer* because unlike *Greer*'s provision, the MSSA does not include the phrase "but only." I find, however, that the absence of the phrase "but only" does not change the meaning between the MSSA and the provision in *Greer*. What does matter is the inclusion of the phrase "to the extent": "[T]he provision [in *Hershey*] did not contain the 'to the extent' limitation . . . , but rather simply provided for indemnification for damages 'caused in whole or in part by' the indemnitor's negligence." *Greer*, 795 A.2d at 380 n.4. Like *Greer*, the provision here plainly includes the limiting clause "to the extent."

In its supplemental brief, the plaintiff cited additional cases for the proposition that Stric-Lan agreed to indemnify HG for HG's own negligence, but those cases are

easily distinguishable. First, the plaintiff cites an indemnity agreement from *Ferraro v. Turner Constr. Co.*, No. 3485, 2013 WL 8596456 (Pa. Ct. Com. Pl., May 13, 2013). The plaintiff cited a significant portion of the indemnity agreement in *Ferraro*, which admittedly has similar language. Yet, what the language in *Ferraro* included that was absent in the MSSA is this: "The [indemnitor] also agrees to indemnify [indemnitee] from liability for [indemnitee's] negligence . . . ." *Id.* at *3. Second, the plaintiff relies on *Cochran v. Gehrke, Inc.*, 293 F. Supp. 2d 986 (N.D. Iowa 2003). *Cochran*, however, was applying Illinois law and the disputed contract language did not contain the limiting "to the extent" language, which was determinative in *Greer*. *See id.* at 997. Lastly, the plaintiff cites *Zampitella v. Bensalem Racing Ass'n*, No. 12–2139, 2013 WL 272485 (E.D. Pa. Jan. 24, 2013). The issue in *Zampitella*, however, was whether the indemnitor was liable for the *indemnitor's* negligence. *See id.* at *3. Indeed, the court found that the indemnitor's argument that it was not liable for the indemnitee's own negligence was "correct and non-controlling." *Id.*

As such, and consistent with the vast majority of courts interpreting nearly identical indemnity provisions with "to the extent" language, I **FIND** that "the clause provides indemnity only for the amount of damage caused by the indemnitor's negligence, and not for damages attributable to the indemnitee's negligence." *Greer*, 795 A.2d at 381; *accord Hagerman Constr. Corp. v. Long Electric Co.*, 741 N.E.2d 390, 393–94 (Ind. App. 2000); *MSI Constr. Managers, Inc. v. Corvo Iron Works, Inc.*, 527 N.W.2d 79, 81 (Mich. Ct. App. 1995); *Dillard v. Shaughnessy, Fickel & Scott*

*Architects, Inc.*, 884 S.W.2d 722, 724–25 (Mo. Ct. App. 1994); *Braegelmann v. Horizon Dev. Co.*, 371 N.W.2d 644, 646 (Minn. App. 1985).

### b. Indemnity for the Kunz Litigation

The next issue I must decide is whether and to what extent HG is entitled to indemnification for Stric-Lan's fault when settling the Kunz Litigation. Considering that the case settled without a jury apportioning negligence between the defendants, at first glance it would seem impossible to determine what that apportionment may have been. Here, however, I need not determine apportionment. There are several dispositive facts that allow me to find as a matter of law that HG is not entitled to indemnification for settling the Kunz Litigation.

In West Virginia, "[i]n any action for damages, the liability of each defendant for compensatory damages shall be several only and may not be joint." W. Va. Code Ann. § 55-7-13c(a). "Each defendant shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault . . . ." *Id.* Importantly, "[t]his section does not affect, impair or abrogate any right of indemnity or contribution arising out of any contract or agreement or any right of indemnity otherwise provided by law." *Id.* § 55-7-13c(f).

The plaintiff argues that while Stic-Lan's immunity bars recovery from Mr. Kunz, Stric-Lan specifically agreed to indemnify HG "even though one or more members of [Stric-Lan] may be protected from direct suit by state workers' compensation laws." MSSA 9. The plaintiff also argues that Stric-Lan could still be negligent even though it is immune from liability, which it argues would trigger the

12

indemnification provision. The plaintiff goes on to argue that it settled on behalf of Stric-Lan because it would have been attributed with Stric-Lan's negligence at trial. But none of those arguments change the fact the Stric-Lan's fault could not be attributed to HG under *West Virginia Code* § 55-7-13c, *et. seq.*

First, HG would have been "liable only for the amount of compensatory damages allocated to [HG] in direct proportion to [HG's] percentage of fault." *Id.* § 55-7-13c(a). Second, "[t]he fault allocated . . . to an immune defendant [such as Stric-Lan]. . . may not be allocated to any other defendant." *Id.* § 55-7-13c(g). Third, Mr. Kunz sued HG for HG's negligence; he did not sue HG on a theory of vicarious liability for Stric-Lan's negligence. Simply put, HG could not be attributed with Stric-Lan's negligence.

This is true whether or not Stric-Lan was included on the verdict form. The defendants argue that HG stipulated at the Kunz Litigation's final pretrial conference that Stric-Lan would not be on the verdict form. The plaintiff argues that those "statements were based on the mistaken belief that the law prevented Stric-Lan from being placed on the verdict from because it was dismissed from the lawsuit." Pl.'s Resp. 11 [ECF No. 193]. Regardless, the statutory language is plain: "Each defendant shall be liable only for the amount of compensatory damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against each defendant for [its] share of that amount." W. Va. Code Ann. § 55-7-13c(a). Moreover, the statutory scheme specifically accounts for parities and nonparties when determining fault: "In assessing

13

percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages regardless of whether the person was or could have been named as a party to the suit." *Id.* § 55-7-13d(a)(1). "In all instances where a nonparty is assessed a percentage of fault, any recovery by a plaintiff *shall be reduced in proportion to the percentage of fault chargeable to such nonparty.*" *Id.* § 55-7-13d(a)(3) (emphasis added).

Thus, if Stric-Lan *was* on the verdict form, its negligence would have been deducted from any recovery and not attributed to HG. *Id.* If Stric-Lan *was not* on the verdict form, HG would still be attributed only with its own negligence. *Id.* § 55-7-13c(a) ("Each defendant shall be liable only for the amount of compensatory damages allocated to that defendant *in direct proportion to that defendant's percentage of fault.*"). Thus, HG could be held liable only for its own fault.

Second, the indemnification provision itself compels such a finding because it would not cover the only remaining claim in the complaint. The "duty to indemnify requires an inquiry into whether there was actual coverage for the underlying claim." *Am. States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 64 (Pa. Super. Ct. 1998). The only claim remaining in the Kunz Litigation at the time of settlement was against HG for its direct, not vicarious, liability. As discussed earlier, HG's own negligence is not covered by the indemnity provision in the MSSA. Thus, because there was no coverage for the only remaining claim—that is, because Stric-Lan is not required to indemnify HG for HG's own negligence—HG is not entitled to indemnification for the negligence claim Mr. Kunz brought against it.

Lastly, HG is not entitled to indemnification for the damages caused by Mr. Kunz's negligence even though he was an employee of Stric-Lan. Any judgment would have already included a deduction for Mr. Kunz's negligence, leaving the only possible recovery solely against HG. *See* W. Va. Code Ann. § 55-7-13c(c) ("If the plaintiff's fault is less than the combined fault of all other persons, the plaintiff's recovery shall be reduced in proportion to the plaintiff's degree of fault."). Under West Virginia's comparative negligence law, a plaintiff assigned 50% fault or more would be barred from recovery. *Bradley v. Appalachia Power Co.*, 256 S.E.2d 879 (W. Va. 1979).

Here, two outcomes existed: either Mr. Kunz would be attributed less than 50% and his recovery would have been reduced by his fault, or Kunz is attributed 50% or more, and he would have been prevented from recovering anyway. In neither scenario would HG have been responsible for Stric-Lan's (its employee's) negligence. Furthermore, while it is conceivable that Arch was paying for Mr. Kunz's injuries as his de facto self-insurer, the indemnification provision requires Stric-Lan to indemnify HG only for claims "brought or asserted against" HG. MSSA 10 ([Stric-Lan] shall . . . indemnify . . . [HG] from and against any and all *claims . . . brought or asserted against* [HG] . . . .") (emphasis added). The claim against HG in the Kunz Litigation was a negligence claim for maintaining an unsafe work environment; there was not a claim against HG for Stric-Lan's negligence. Accordingly, no indemnifiable claim was "brought or asserted against" HG.

Being no genuine issue of material fact, I **FIND** that the defendants are entitled to judgment as a matter of law.

## IV. Conclusion

Accordingly, the defendants' Motion for Summary Judgment [ECF No. 192] is **GRANTED** and the plaintiff's Motion [ECF No. 190] is **DENIED**. The pending motions in limine [ECF Nos. 203, 204, 205, 206, 207, 208, 209, 210 & 211] are **DENIED AS MOOT**. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: June 24, 2019

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE