IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ARCH INSURANCE COMPANY,

           Plaintiff,

v.                                                              CIVIL ACTION NO. 2:15-cv-09203

BERKLEY NATIONAL INSURANCE
COMPANY, et al.,

           Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the court is Plaintiff Arch Insurance Company's Second Motion for Summary Judgment. [ECF No. 235]. This suit began as a declaratory action to determine the rights of the parties under competing insurance obligations after Defendants disclaimed coverage for an underlying lawsuit. I have already concluded that under the controlling insurance contract, Defendant Berkley National Insurance Company owed its insured, co-Defendant HG Energy, a duty to defend and indemnify it from the underlying lawsuit. Thus, this motion for summary judgment requests relief on the only issues remaining: Plaintiff's damages and attorneys' fees, including the entire amount paid to settle the underlying lawsuit, attorneys' fees and costs for defending HG from the underlying lawsuit, and attorneys' fees and costs in litigating this declaratory judgment action. [ECF Nos. 142 at 21–22, 235 at 3–4]. For the reasons below, Plaintiff's Motion is **GRANTED**.

I. Background

HG Energy, LLC, ("HG") owns and operates oil and gas wells in West Virginia. Stric-Lan Companies, LLC, ("Stric-Lan") is a service company that contracted with HG in 2012 to provide certain services, equipment, and personnel for HG's well operations. The contract that memorializes this relationship and lays out each party's obligations is the Master Service and Supply Agreement ("MSSA"). [ECF No. 235-1]. All parties agree that the MSSA is an "insured contract." *Steadfast Ins. Co. v. Berkley Nat'l Ins. Co.*, 217 F. Supp. 3d 904, 914 (S.D. W. Va. 2016). In a published opinion in 2016, I determined that the obligations laid out in the MSSA control this dispute. *Id.* at 915.

In the MSSA, Stric-Lan is referred to as "Contractor" and HG is referred to as "Company." [ECF No. 235-1, at 1]. "Contractor" and "Company" are both defined to encompass each respective entity, as well as their respective parent companies, successors, assigns, subsidiaries, affiliates, "agents, directors, officers, and employees." *Id.* at 6. The MSSA required Stric-Lan to obtain insurance and name HG as an additional insured under the policy. *Id.* at 7. The parties also acknowledged the risk of loss or injury in connection with the services to be performed and allocated those risks in the MSSA "so as to minimize the possibility of disputes and to engage in effective risk management." *Id.* at 8. To that end, Stric-Lan and HG agreed to several defense and indemnity obligations in the MSSA.

Stric-Lan agreed to the following indemnity obligations:

> Contractor shall defend, indemnify, hold harmless, and release Company from and against any and all claims,

2

>losses, damages, demands, causes of actions, suits, judgments and liabilities of every kind *(including all expenses of litigation, court costs and reasonable attorneys' fees)* brought or asserted against Company by any party whomsoever, directly or indirectly arising out of or related to this Agreement and resulting from any claim of loss, damage, injury, illness, or death, including, but not limited to, those described in subparagraphs (a) through (i) below, *to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree)*, strict liability, or willful misconduct *of the Contractor, regardless of whether the Company is negligent in part*.
>(a) Personal injury to, bodily injury to, emotional or psychological injury to, property or wage loss, benefits loss, or illness or death of Contractor's employees or invitees, (including, without limitation, all costs and expenses associated with medical evacuation of and/or emergency medical services provided to such persons), *even though one or more members of Contractor may be protected from direct suit by state workers' compensation laws.*
>. . .
>(i) Any breach of this Agreement by Contractor.

*Id.* at 9–10 (emphasis added). HG agreed to an almost identical indemnity provision. *Id.* at 11.[1]

Stric-Lan agreed to a defense obligation in the MSSA that provided that "the Contractor shall owe Company a separate duty to investigate, handle, respond to and

---

[1] HG's indemnity obligations under the MSSA are as follows:
>Company shall defend, indemnify, hold harmless, and release Contractor from and against any and all claims, losses, damages, demands, causes of actions, suits, judgments and liabilities of every kind (including all expenses of litigation, court costs and reasonable attorneys' fees) brought or asserted against Contractor by any party whomsoever, directly or indirectly arising out of or related to this Agreement and resulting from any claim of loss, damage, injury, illness, or death, to the extent that such claims, losses, damages, injuries, illnesses, or death are caused by the negligence (of any degree), strict liability, or willful misconduct of Company, regardless of whether the Contractor is negligent in part.

[ECF No. 235-1, at 11].

3

provide defense for any claim, demand or suit for which Contractor extends indemnity in this Agreement, and shall satisfy any and all judgments or decrees which may be entered." *Id.* at 12. Stric-Lan agreed that "[t]he duty of defense shall require Contractor to retain counsel of Contractor choice and sole cost and expense to represent the Company." *Id.* Finally, Stric-Lan agreed in paragraph V.D.5 of the MSSA that:

> [i]f a demand of defense and indemnity is made by the Company but rejected by Contractor, then upon a determination that Contractor owed a duty of defense under this Agreement, Contractor shall be held liable for any amount paid by the settling party without a need for a judicial determination as to whether the Company had potential liability to the claimant or whether the settlement amount was reasonable.

*Id.* at 13.

Per the MSSA, Stric-Lan obtained insurance coverage from Defendant Berkley National Insurance Company ("Berkley") and named HG as an additional insured. *Steadfast*, 217 F. Supp. 3d at 908–09. I found that between the Berkley insurance policy and the MSSA, the provisions of the MSSA controlled "because the Berkley policy expressly limits its coverage to the lesser terms of the MSSA." *Id.* at 915.

In 2013, a Stric-Lan employee, Tyler Kunz, was severely injured by an explosion at an HG wellsite in West Virginia. [ECF No. 142, at 3]. Mr. Kunz sued both HG and Stric-Lan in the Circuit Court of Wood County, West Virginia, alleging that HG was negligent for not providing him with a safe workplace and that Stric-Lan was liable under West Virginia's deliberate-intent statute. *Id.* at 2, 3. At that time, the Kunz complaint alleged that Stric-Lan "created a specific unsafe working

4

condition" to which it intentionally exposed Mr. Kunz, causing his severe injuries. [ECF No. 235-4, at 3–6]. Following the terms of the MSSA and its associated insurance policy, HG tendered the claim to Stric-Lan for defense and indemnification. [ECF No. 235-5]. Stric-Lan refused to indemnify HG because Mr. Kunz had "not brought a claim against Stric-Lan for 'negligence (of any degree), strict liability, or willful misconduct[,]'" which it called "the three triggers for indemnification under the MSSA." [ECF No. 235-6, at 2 (quoting [ECF No. 235-1, at 9])]. Because Stric-Lan's reading of the MSSA did not require it to extend indemnity for the Kunz lawsuit, it similarly reasoned that it did "not owe HG a defense obligation." *Id.*

The Circuit Court found Stric-Lan to be statutorily immune from the Kunz lawsuit pursuant to applicable state workers' compensation laws and dismissed Stric-Lan as a defendant, which left only HG to defend the suit. *Steadfast*, 217 F. Supp. 3d at 916 n.9; [ECF No. 239-2, at 7, 15]. HG was also insured by Plaintiff Arch Insurance Company ("Arch") and Steadfast Insurance Company ("Steadfast"). Because Stric-Lan and Berkley refused to defend HG, Arch and Steadfast paid for the defense and settlement of the Kunz lawsuit. In 2015, Arch paid $5,000,000 and Steadfast paid $1,000,000 to Mr. Kunz to settle the lawsuit. The cost paid to defend HG in the Kunz lawsuit was $152,816.41. [ECF No. 235, at 3].

Arch and Steadfast brought a declaratory judgment action against Berkley, Stric-Lan, and HG seeking a determination that the Berkley insurance policy provided "additional insured" coverage for HG in the Kunz action and that Berkley had to provide primary, non-contributory coverage for the defense and settlement of

5

the Kunz action. *See Steadfast*, 217 F. Supp. 3d at 909. The parties moved for summary judgment, and I found that (1) Pennsylvania law controls this dispute; (2) under the MSSA, Stric-Lan and subsequently Berkley had a duty to provide primary, non-contributory insurance coverage to HG; (3) under the terms of that coverage, Berkley had a duty to defend and a duty to indemnify HG; and (4) the Kunz complaint alleged facts sufficient to trigger these duties. *Id.* at 913, 917. As my order did not "address the insurance companies' rights, subrogation, amount in question and good faith settlements, and reimbursement[,]" I granted Steadfast and Arch leave to file an amended complaint seeking civil damages. *Id.* at 917; [ECF No. 141].

In the amended complaint, Steadfast and Arch sought their expenses in defending and resolving the Kunz litigation. [ECF No. 142, at 21–22]. Arch alleged the following claims against Stric-Lan and Berkley ("Defendants"): Declaratory Relief (Count I); Equitable and Legal Subrogation (Count II); and Breach of Contract (Count III). *Id.* at 15–21. After filing the amended complaint, Steadfast settled its claims with Stric-Lan and Berkley and was dismissed from this case. [ECF No. 167]. Arch moved for summary judgment, seeking to recover the $5,000,000 it advanced to settle the Kunz lawsuit with interest, as well as attorneys' fees and costs. [ECF No. 190]. Berkley and Stric-Lan then filed cross motions for summary judgment, arguing that HG settled the Kunz lawsuit purely for its own negligence and not Stric-Lan's and that because the MSSA did not require Stric-Lan to indemnify HG for HG's own negligence, Berkley and Stric-Lan were entitled to judgment as a matter of law. [ECF No. 192].

In 2019, I entered an order granting summary judgment to Berkley and Stric-Lan that the Fourth Circuit later vacated because it relied on incorrect law. *Arch Ins. Co. v. Berkley Nat'l Ins. Co.*, 399 F. Supp. 3d 571 (S.D. W. Va. 2019), *vacated and remanded*, 856 F. App'x 439 (4th Cir. 2021). At that time, I found that the MSSA "provide[d] indemnity only for the amount of damage caused by [Stric-Lan's] negligence, and not for damages attributable to [HG's] negligence." *Id.* at 577. Relying on West Virginia's fault-apportionment statute that became effective in 2015, I reasoned that because Stric-Lan was not a defendant at the time Mr. Kunz settled with HG, HG resolved the Kunz lawsuit on HG's own negligence, and thus Arch had no right to indemnity from either Stric-Lan or Berkley. *Id.* at 577–79.

On appeal, the Fourth Circuit concluded that my mistaken reliance on the 2015 statute—as opposed to the statute that would have applied to the Kunz lawsuit with a cause of action occurring in 2013—was not harmless and thus vacated the judgment and remanded the case. *Arch Ins. Co. v. Berkley Nat'l Ins. Co.*, 856 F. App'x 439, 445 (4th Cir. 2021). The Fourth Circuit further observed that application of West Virginia's fault-apportionment statute "concerns the *collectability* of a judgment by a plaintiff. That statutory provision does not change the *availability* of contractual indemnification between putative tortfeasors." *Id.* at 445 n.5 (emphases added) (citation omitted). Additionally, although Arch argued to the Fourth Circuit that paragraph V.D.5 entitled it to its requested relief, the Fourth Circuit found that Arch had not properly raised that argument before me and had thus waived the argument on appeal. *Id.* at 442–43.

7

On remand, Arch filed its second motion for summary judgment, arguing that paragraph V.D.5 of the MSSA entitled it to relief. Berkley argues in response that paragraph V.D.5 has the improper effect of nullifying HG's indemnity obligations to Stric-Lan under the MSSA and that Arch must prove Berkley acted in bad faith in refusing coverage for the Kunz litigation for Arch to recover its attorneys' fees. [ECF No. 239].

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986). Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In performing this inquiry, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

III.  Discussion

    A.  Subrogation

As a preliminary matter, Arch argues that "having discharged the debt of another who was primarily liable, Arch is now legally and equitably subrogated to the rights of HG Energy against the other." [ECF No. 235 at 12]. I agree.

Upon paying a loss, an insurer is subrogated to its insured's right of action against any other person or entity responsible for the loss, such that the insurer is entitled to bring an action against the third party whose wrongful conduct caused the loss. *See Arlet v. Workers' Comp. Appeal Bd.*, 270 A.3d 434, 442 (Pa. 2022); 16 Steven Plitt, et al, *Couch on Ins.* § 222:5 (3d ed. 2021). The insurer is the subrogee—that is, the person or entity that assumes the right to attempt to collect on the insured's claim against a third party by paying the insured's claim-related debts or expenses. *Subrogee*, Black's Law Dictionary (11th ed. 2019). The general rule in the United States is that a subrogee is not limited to asserting claims against third party tortfeasors but may assert a claim against the subrogor's contractual obligor as well. *Dome Petroleum Ltd. v. Emps. Mut. Liab. Ins. Co. of Wisconsin*, 767 F.2d 43, 45–46 (3d Cir. 1985) (citing G. Couch, R. Anderson & M. Rhodes, *Couch on Ins.* § 61:147 (2d ed. 1983)). The goal of subrogation is to place the burden of the debt upon the entity that should rightfully bear it. *F.B. Washburn Candy Corp. v. Fireman's Fund*, 541 A.2d 771, 774 (Pa. Super. 1988).

Arch paid the debt of its insured, HG, as to the Kunz lawsuit. I previously found that under the terms of the MSSA, Berkley was contractually obligated to

9

defend and indemnify HG against that debt. Thus, Arch's Motion for Summary Judgment as to Counts I and II of its First Supplemental and Amended Complaint is **GRANTED** insofar as it requests a declaration that Arch is subrogated to the rights of HG under the MSSA.

### B. Waiver of Paragraph V.D.5

Arch argues, "Because this Court ruled in its November 21, 2016[,] Order that Stric-Lan and its insurer Berkley had a duty to provide primary coverage for the defense of HG Energy in the Kunz Lawsuit, the consequences set forth in ¶ V.D.5 of the MSSA apply." [ECF No. 236, at 10 (internal quotation marks omitted)].[2]

Defendants argue that enforcement of paragraph V.D.5 would be contrary to my 2019 order that the Fourth Circuit vacated, which they urge is the "law of the case." [ECF Nos. 239, at 10, 14]. However, that vacated order has no precedential effect in this matter. "As a general rule, a vacated judgment and the factual findings underlying it have no preclusive effect; the judgment is a legal nullity." *Zeneca Ltd. v. Novopharm Ltd.*, 919 F. Supp. 193, 196 (D. Md. 1996) (collecting cases). Thus, my decision here is not constrained by any findings made in my 2019 order, and Defendants' arguments made per that order fail.

---

[2] Paragraph V.D.5 of the MSSA states:
>If a demand of defense and indemnity is made by [HG] but rejected by [Stric-Lan], then upon a determination that [Stric-Lan] owed a duty of defense under this Agreement, [Stric-Lan] shall be held liable for any amount paid by the settling party without a need for a judicial determination as to whether [HG] had potential liability to the claimant or whether the settlement amount was reasonable.

[ECF No. 235-1 at 13].

10

Defendants are correct, however, that my decision is constrained by the law of the case, which includes the Fourth Circuit's findings on appeal. Although not considered by either party, the mandate rule—which is "a specific application of the law of the case doctrine"—"compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993). The mandate rule additionally "forecloses litigation of issues decided by the district court but foregone on appeal *or otherwise waived, for example because they were not raised in the district court.*" *Id.* (emphasis added).

Here, although the language of the Fourth Circuit's opinion appears to not foreclose future arguments about paragraph V.D.5,[3] the opinion has just that effect. The Fourth Circuit found that Arch did not raise the argument that paragraph V.D.5 of the MSSA entitles it to damages in the amount it paid to settle the Kunz lawsuit before me, and thus Arch waived the argument. *Arch Ins. Co. v. Berkley Nat'l Ins. Co.*, 856 F. App'x 439, 442 (4th Cir. 2021). Although Arch claimed then, as it does now, that it raised paragraph V.D.5 several times in this litigation, the Fourth Circuit found that the provision was only ever "cited for the assertion that Stric-Lan and Berkley cannot challenge the reasonableness of the settlement," not for "the argument it tries to raise here: that because Stric-Lan rejected HG Energy's demand

---

[3] The choice of language in the Fourth Circuit's opinion makes reasonable the inference that the panel considered Arch's argument on paragraph V.D.5 waived only for purposes of challenging my summary judgment order on appeal. *See Arch Ins. Co.*, 856 F. App'x at 443, 445 ("So Arch has waived this argument *for vacating the grant of summary judgment.*") ("Arch raised two challenges to the district court's grant of summary judgment. While the first is waived *in this appeal*, Arch's second argument requires that we vacate and remand for further proceedings.") (emphases added).

11

of defense and indemnity, Arch is entitled to indemnification." *Id.* at 443; [ECF No. 242, at 5–8].

In accordance with the Fourth Circuit's opinion, the law of the case precludes Arch from litigating the issue of whether paragraph V.D.5 entitles it to all of the money it expended in settling the Kunz lawsuit. I thus do not address the merits of its arguments to that effect.

### C. Breach of the Duty of Defense

Arch argues that "[h]aving breached the MSSA by not defending HG Energy in the Kunz Lawsuit, Stric-Lan and its insurer, Berkley, are obligated under the MSSA to pay as damages all of the money Arch expended in settling the Kunz Lawsuit." [ECF No. 235, at 4]. As the parties noted, the duty to defend is separate from and broader than the duty to indemnify—and for good reason. Pennsylvania's public policy supports a broad duty to defend that "encourages insurance companies to construe their insurance contract broadly and to defend all actions where there is any potential coverage." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 543 (Pa. 2010); *see also Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 207–08 (3d Cir. 2001) (explaining that Pennsylvania's public policy favors coverage of the insured).

At its core, whether an insurer has breached its duty to defend is a matter of contract law. As Defendants point out, "When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain

meaning." [ECF No. 239, at 12] (citing *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009)). As I have previously noted, "[w]here a contract lays out terms under which the additional insured will be covered, the additional insured must be afforded coverage whenever the conditions specified in the terms occur." *Steadfast,* 217 F. Supp. at 914 (citing *Twp. of Springfield v. Ersek*, 660 A.2d 672, 676 (Pa. Commw. Ct. 1995)).

In determining rights and obligations under an insurance contract, "[a]n insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy." *Am. & Foreign Ins. Co.*, 2 A.3d at 541. The particular claims that a complainant pleads are "not determinative of whether coverage has been triggered." *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999). Instead, it is "necessary to look at the factual allegations contained in the complaint." *Id.* A refusal to defend without good cause breaches the obligation to defend. *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320, 322 (Pa. 1963).

Per the MSSA, Stric-Lan listed HG as an additional insured on its policy with Berkley. It is undisputed that HG made a demand of defense and indemnity from the Kunz lawsuit to Defendants under the MSSA, which Defendants refused because Mr. Kunz's complaint did not plead claims for negligence, strict liability, or willful misconduct against Stric-Lan. But the plain language of the MSSA does not require these particular, direct claims against Stric-Lan to trigger Stric-Lan's defense

13

obligations. Rather, the MSSA required Stric-Lan to defend HG "against *any and all claims*, losses, damages, demands, causes of action, suits, judgments and liabilities . . . brought or asserted against [HG]" so long as they resulted "from any claim of loss, damage, injury, illness, or death . . . *caused by the negligence (of any degree)*, strict liability, or willful misconduct of [Stric-Lan], regardless of whether [HG] is negligent in part." [ECF No. 235-1, at 9 (emphasis added)]. I previously held that pursuant to the MSSA, Defendants owed HG a duty to defend it from the Kunz lawsuit because the Kunz complaint alleged that negligence or willful misconduct on the part of Stric-Lan potentially caused Mr. Kunz's injuries. *See Steadfast*, 217 F. Supp. 3d at 916–17. By disclaiming coverage of the Kunz lawsuit without good reason, Defendants breached their duty to defend under the MSSA.

Pennsylvania law contemplates the repercussions for an insurance company's breach of its duty to defend its insured. "[W]hen an insurer declines coverage and refuses to negotiate on the grounds that the matter is not covered by the policy, it does so at its own peril." *Liberty Mut. Ins. Co. v. Penn Nat'l Mut. Cas. Ins. Co.*, 499 F. Supp. 3d 130, 139 (W.D. Pa. 2020), *aff'd*, No. 20-3468, 2021 WL 5401543 (3d Cir. Nov. 18, 2021).[4] Moreover, "an insurer who breaches its obligation to defend is

---

[4] This is because, again, Pennsylvania's public policy supports a broad duty to defend that "encourages insurance companies to construe their insurance contract broadly and to defend all actions where there is any potential coverage." *Am. & Foreign Ins. Co.*, 2 A.3d at 543. To be clear, an insurance company is not made to choose between either defending and indemnifying its insured from every claim in a given lawsuit or summarily disclaiming its duty to defend when every allegation in a lawsuit does not fall within the applicable policy's coverage. If Defendants here contested whether or to what extent they were obligated to defend HG from the Kunz lawsuit, they could have honored their duty to defend while protecting their rights under the MSSA "by timely issuing a reservation of rights which fairly informs the insured of the insurer's position." *Merchants Mut. Ins. Co. v. Artis*, 907 F. Supp. 886, 891 (E.D. Pa. 1995). Moreover, "if an insurance company is uncertain about its duty to defend an insured in a third party's action, it is expected and anticipated that the insurance company will bring a

estopped from arguing that the settlement represented claims outside those covered under the policy because an insurer cannot stand aside while the underlying case proceeds and only after it is settled seek to dissect it." *Id.* at 142 n.6 (internal quotation marks omitted). As a result, "an erroneous refusal to defend, which the Court has already found here, requires the refusing insurer to indemnify any later settlement, without any need to establish actual liability under the policy, if it is determined that the insurer is obligated to indemnify." *Id.*

I found that Defendants were obligated to indemnify HG from the Kunz lawsuit because there was "sufficient evidence to determine that the Kunz incident was caused by the negligence of Stric–Lan" such that "Berkley's duty to indemnify was triggered." *Steadfast*, 217 F. Supp. 3d at 916–17. Defendants continue to incorrectly deny that the Kunz lawsuit triggered their duty to indemnify, claiming that the Kunz lawsuit was settled only for HG's negligence and that Stric-Lan's negligence must first be established by Arch to trigger indemnity. [ECF No. 239 at 2, 13]. However, as the Fourth Circuit instructed, in the MSSA:

> Indemnification is conditioned on whether an action has been asserted against HG Energy, the basis of which is an injury caused *at least in part* by Stric-Lan's negligence, strict liability, or willful misconduct. Here, Kunz asserted an action against HG Energy. And HG Energy contends that Kunz's injury stemmed in part from negligence or misconduct attributable to Stric-Lan. So HG Energy may seek contractual indemnification from Stric-Lan.

---

declaratory judgment action concerning its duty to defend *prior to denying coverage to an insured*." *Selective Way Ins. Co. v. Hosp. Grp. Servs.*, 119 A.3d 1035, 1048 (Pa. Super. 2015) (emphasis added).

15

*Arch*, 856 F. App'x at 444–45. Moreover, while there is no need to establish actual liability under the policy, "both Berkley and Stric-Lan admit that Mr. Kunz's negligence—the negligence of a Stric–Lan employee—led to the incident at the heart of the Kunz litigation." *Steadfast*, 217 F. Supp. 3d at 917; *see also* [ECF Nos. 92-1, at 11, 92-2, at 11] (Defendants' responses to requests for admission, admitting that Stric-Lan employee Tyler Kunz was negligent in causing his injuries). Given that Stric-Lan employees confer the same obligations under the MSSA's definition of Stric-Lan as Stric-Lan itself, Defendants admitted Stric-Lan's negligence for the purposes of this suit.

An insurer's "failure to join in the settlement proceedings and their refusal to indemnify [the insured] . . . [has] the effect of relaxing judicial scrutiny of the settlement, limiting it to a search for reasonableness." *American Intern. Underwriters Corp. v. Zurn Industries, Inc.*, 771 F. Supp. 690, 701 (W.D. Pa. 1991) (citing *Alfiero v. Burks Mut. Leasing Co.*, 500 A.2d 169, 172 (Pa. Super. 1985)). Here, while Arch waived its argument that paragraph V.D.5 of the MSSA entitles it to all the money it expended as a result of Defendants' breach of the duty to defend, the Fourth Circuit found that Arch preserved its argument that Defendants cannot challenge the reasonableness of the Kunz settlement pursuant to paragraph V.D.5. *Arch*, 856 F. App'x at 443. Defendants have not argued that paragraph V.D.5 is unenforceable or unconscionable, and, importantly, "[u]nder Pennsylvania law, the burden of establishing unconscionability lies with the party seeking to invalidate" a contract provision. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 129 (Pa. 2007).

Because the MSSA controls this dispute, its effect has not been challenged, and it requires that Arch be reimbursed without the need for a judicial determination of reasonableness due to Defendants' breach, I find that Arch is entitled to the full amount it paid to settle the Kunz lawsuit.

Arch's Motion for Summary Judgment is **GRANTED** for the costs of $5,000,000 it paid to settle the Kunz lawsuit "plus prejudgment interest at the statutory rate from the date that the settlement was paid." *Liberty Mut. Ins. Co.*, 499 F. Supp. 3d at 146.

### D. HG's Cost of Defending Kunz Lawsuit

The typical recovery for breaching the duty to defend is to require the breaching insurer to pay for the costs of defense. *TIG Ins. Co. v. Nobel Learning Communities, Inc.*, No. CIV.A. 01-4708, 2002 WL 1340332, at *14 (E.D. Pa. June 18, 2002) (collecting Pennsylvania cases). This is because the benefit of the bargain for the insured in an insurance contract is the insurance company protecting the insured from lawsuits that trigger insurance coverage by fulfilling its contractual duties to defend and indemnify. Based on the usual contract rule for determining damages, the recovery is the cost of hiring substitute counsel and other costs of the defense of the underlying action between the injured party and the insured. *Id.* Because I have found that Defendants breached their duty to indemnify Arch under the MSSA, Defendants are compelled to pay the attorneys' fees and costs expended when HG had

to defend itself from the Kunz lawsuit. Arch's Motion for Summary Judgment is **GRANTED** for the costs it paid to defend HG from the Kunz lawsuit.

### E. Attorneys' Fees for Declaratory Judgment Action

Pennsylvania courts have long held that "an insured who is compelled to bring a declaratory judgment action to establish his insurer's duty to defend an action brought by a third party may recover [its] attorneys' fees incurred in the declaratory judgment action if the insurer has, in bad faith, refused to defend the action brought by the third party." *Kelmo Enters., Inc. v. Commercial Union Ins. Co.*, 426 A.2d 680, 685 (Pa. Super. 1981); *see also Kiewit E. Co. v. L & R Const. Co.*, 44 F.3d 1194, 1205 n.36 (3d Cir. 1995). Common law allegations of bad faith, as opposed to those brought pursuant to statute, are judged by whether the insurer acted "negligently or unreasonably" in handling the insurance claim. *DeWalt v. Ohio Cas. Ins. Co.*, 513 F. Supp. 2d 287, 297 (E.D. Pa. 2007). Plaintiffs must prove common law bad faith by clear and convincing evidence. *Cowden v. Aetna Cas. & Sur. Co.*, 134 A.2d 223, 229 (Pa. 1957). "[W]here the clear and convincing evidence standard applies, the trial judge must inquire [at summary judgment] whether the evidence presented is such that a jury applying that evidentiary standard could find only for one side." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 522 (3d Cir. 2004), *as amended* (Aug. 12, 2004).

Here, Arch argues that the Defendants acted in bad faith in repudiating their duty to defend HG in the Kunz lawsuit and in their mendacious interpretation of the MSSA. Arch states that "Berkely has cited one frivolous reason after another" as a basis for its denial of its duty to defend and indemnify HG from the Kunz lawsuit.

[ECF No. 236, at 13]. Arch points out that Defendants have never made any offer to settle this matter, even after I found in 2016 that they had a duty to defend and indemnify HG from the Kunz lawsuit. *Id.*

A failure to "effectuate prompt, fair and equitable settlements of claims in which the company's liability under the policy has become reasonably clear" is considered an unfair insurance practice under Pennsylvania law. 40 Pa. Stat. Ann. § 1171.5(a)(10)(vi). While a violation of the Unfair Insurance Practice Act is not a per se instance of bad faith, it does point to a material fact that supports a finding of bad faith. *See Slupski v. Nationwide Mut. Ins. Co.*, No. CV 18-3999, 2021 WL 2948829, at *4 (E.D. Pa. July 14, 2021) (collecting cases). Moreover, the Third Circuit has found that an insurer's "persistent refusal to defend, notwithstanding the district court's determination of its obligation to do so, can be characterized as nothing less than unreasonable and in bad faith." *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 769 (3d Cir. 1985).

Given the Fourth Circuit's and this court's resolution of any dispute as to the obligations of Defendants under the MSSA, Defendants' refusal to defend, indemnify, or offer a settlement for a claim under those terms is enough evidence that a trier of fact applying the clear and convincing evidentiary standard could find only for one side. The legal fees incurred by Arch in this declaratory judgment action are damages arising directly from Defendants' breach of the MSSA, the material facts of this case are not in dispute, and there has been no demand for a jury. I find that the evidence does not present "a sufficient disagreement to require submission to a jury" because

here, the evidence is so "one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Arch's Motion for Summary Judgment as to its entitlement to its attorneys' fees for this declaratory judgment action is **GRANTED**.

## IV. Conclusion

For the foregoing reasons, Arch's Motion for Summary Judgment [ECF No. 235] is **GRANTED**. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER: June 13, 2022

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE